UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KURIN, INC., <br><br> Plaintiff, <br><br> v. <br><br> ICU MEDICAL, INC. AND VASCULAR INTEGRITY, LLC, <br><br> Defendants. | Case No. 8:24-cv-00564-FWS-(ADSx) <br><br> **STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

## I. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, this Court's Standing Order on Discovery Disputes, and any other applicable orders and rules.  Nothing in this order is intended to alter or affect any party's rights or obligations under any order by the assigned District Judge, but shall be construed instead, wherever possible, as consistent with any order by the assigned District Judge.

## II. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's

Standing Order on Discovery Disputes, the Federal Rules of Civil Procedure, and the Local Rules of this Court.  The parties acknowledge that they have reviewed and shall reference the Court's Checklist for Conference of Counsel Regarding ESI when seeking to resolve discovery disputes about ESI during meet-and-confer conferences.

## III.  PRESERVATION

The parties will discuss their preservation obligations and needs. The parties agree that preservation of potentially relevant ESI will be reasonable and proportionate.  To reduce the costs and burdens of preservation and to ensure proper ESI is preserved/produced, the parties agree that:

**A.** To the extent available, ESI created or received from January 1, 2018 to present will be preserved except as otherwise provided herein;

**B.** The parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager."  The parties shall add or remove custodians as reasonably necessary;

**C.** The parties will work together in good faith to agree on the number of custodians per party for whom ESI will be preserved;

**D.** These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not searched, reviewed, or produced, unless good cause for the production can be shown by the receiving party seeking the production, and further subject to the producing party's claim of undue burden or cost: digital voicemail, voice messages, and text messages that are not chronicled to an email archive system; instant messaging or group chat messages (*e.g.*, Teams, Slack, Zoom) that are not chronicled to an email archive system; mobile device activity logs; server, system, or network logs; random access memory (RAM), temporary files, or other ephemeral

data that are difficult to preserve without disabling the operating system; and automatically saved versions of documents;

## IV. SEARCH FOR NON-EMAIL ESI

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search non-email ESI to identify non-email ESI that is subject to production in discovery and filter out non-email ESI that is not subject to discovery.

## V. SEARCH FOR EMAIL

General production requests under Federal Rule of Civil Procedure 34 shall not include email. To obtain email, parties must propound specific email production requests.

Email production requests shall only be propounded for specific issues rather than general discovery of a product or business.

Email production requests shall be phased to occur after the parties have exchanged initial disclosures and written objections and written responses to the parties' first sets of non-email document requests.

Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframes. Email production requests may be served in one or more sets of such requests, wherein each set includes one or more custodians, subject to the following limitations. Email production requests must be served no later than 75 days before the close of fact discovery.

Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon a showing of distinct need based on the size, complexity, and issues of this specific case. Cost shifting may be considered as part of any such request.

Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

## VI.   PRODUCTION FORMATS / SPECIFICATIONS

The parties agree to produce documents in ☐ PDF, ☒ TIFF, ☒ native and/or paper, or a combination thereof (check all that apply) file formats subject to the following:

**For Documents gathered from or stored in electronic format:**

1.   *General Document Image Format*: Each electronic document shall be produced in single-page Tagged Image File Format ("TIFF"). All TIFF files should be provided in a single-page, Group IV, and 8 ½ x 11 inch page size format at a

minimum of 300 x 300 dpi resolution (except for documents requiring a different resolution or page size). The Parties further agree that all documents originating in color shall be produced in color.

2. *Bates Numbering and Unique IDs*: Bates numbers shall be unique IDs with a prefix that can be readily attributed to the producing party. Bates numbering should be sequential. The Parties agree to use placeholders (e.g., a Bates-numbered page labeled "intentionally left blank"), rather than skipping Bates numbers in production. Each image should have a unique file name. For single-page TIFFs, the unique file name will be the Bates number of the page.

3. *Extracted Text Files*: For each document, a text file containing the extracted text should be provided along with the corresponding TIFF images. The text of files collected and reviewed in native format should be extracted at document-level directly from the native file. The text file should be named after the Beginning Bates number of the document. For those electronic files that do not have embedded text (such as certain .PDF files and image formats), the file should be imaged and OCR'd, and the subsequent OCR text files should be delivered in a manner consistent with the above.

4. *Metadata Fields*: The metadata fields set forth in the attached **Table 1** should be provided for each record to the extent such fields exist for that record, and shall be provided via a Relativity or other standard load file. Absent a showing of good cause, no additional metadata need be produced. The Parties agree not to modify or otherwise alter metadata for files originating in electronic form unless necessary to protect privilege and/or confidentiality claims.

5. *Native Format Files:* The Parties agree to supplement their image-based production with the exchange of certain file types in their native form.

(a) The Parties agree that the following document types shall be provided in native form in addition to their image form (the corresponding images for the categories listed below will be Bates-numbered place holders only):

- Spreadsheets (e.g., .XLS, .XLSX);
- Presentations (e.g., .PPT, .PPTX); and
- Media files (e.g., .MP3, .WAV, .MPG, .AVI, .MOV, etc.).
- Computer aided design files (e.g., .DWG, .DXF, .3DS, .MDX, .STL, .STP, etc.)

(b) The Parties further agree that a Bates-numbered placeholder will be provided for every document produced in native format.

(c) To ensure tracking, data integrity, and to provide a means for authentication, the Parties agree that all produced native files will be assigned a unique file name or identifier and a hash value. The unique file name shall be the Beginning Bates number of the corresponding placeholder. The hash value shall be the MD5 or SHA1 value generated on the originating native file.

(d) To the extent that any document is redacted to preserve a claim of privilege, the Parties agree that such redacted documents will be provided in image form only, and that no corresponding native file will be provided (regardless of file type).

(e) For all other document or file types, the Parties agree that any party has the right to seek production of other documents or files in their native form should they identify files whose meaning and interpretation requires that they be reviewed in such a manner. The Parties agree to limit the request for such files in good faith, and submit any request according to the following protocol:

(i) The receiving party shall provide a list of Bates numbers of the imaged documents sought to be produced in native file format.

(ii) The producing party shall have 10 business days to either produce the native documents or object to the demand by responding in writing and setting forth its objection(s) to the production of the requested native format files. In the event an objection is made, the Parties shall meet and confer regarding the request

and corresponding objection(s). If the Parties are unable to agree as to the production of the requested files in native format, the Parties may submit the matter to the Court.

**For Documents scanned or otherwise converted into electronic format from paper copy documents:**

1. *General Document Image Format*: All TIFF files should be provided in a single-page, Group IV, black & white, and 8 ½ x 11 inch page size format at a minimum of 300 x 300 dpi resolution (except for documents requiring a different resolution or page size).

2. *Unique IDs*: Each image should have a unique file name. For single-page TIFFs, the unique file name will be the Bates number of the page.

3. *Text Files*: For each document, a document-level OCR text file should be provided along with the corresponding TIFF images. The text file should be named after the Beginning Bates number of the document.

4. *Objective Coding Fields:* The following objective coding fields should be provided for all produced hard copy documents:

   (a) Beginning Bates Number;
   (b) Ending Bates Number;
   (c) Beginning Attachment Bates Number (if applicable);
   (d) Ending Attachment Bates number (if applicable);
   (e) Page count; and
   (f) Source/Custodian.

If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process. The parties also agree to produce ESI in accordance with the following:

**A.   Attachments and Attachment Ranges:** Parent-child relationships (the association between an attachment and its parent document) should be preserved, and

each parent document and all its associated attachments should be produced as separate documents. Bates numbering of a parent document and any attachments shall be sequential such that a parent document has the lowest value Bates number when compared to its attachment(s). The Parties agree to provide family/attachment Bates ranges for all productions.

   **B.** **Transmission and Delivery of Production Material:** The Parties agree to provide production material in a reasonably usable manner, typically on USB drives (external, flash/thumb), or via secure transmission (via FTP or other method). If possible, the Parties agree <u>not</u> to deliver any single production on multiple soft or optical media (CD/DVD).

   **C.** **Resolution of Production Issues:** Documents that cannot be read because of imaging, formatting, or other technical issues shall be promptly identified by the receiving party within an exceptions index which will list the document and reasons for the exception ("Exceptions Index"). The Parties shall meet and confer to attempt to resolve the issues with respect to any documents contained on the Exceptions Index to the extent the exceptions are within either party's control.

**VII. DOCUMENTS PROTECTED FROM DISCOVERY**

   **A.** Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. Nothing contained herein, however, is intended to limit a party's right to conduct a review of ESI for relevance, responsiveness and/or privilege or other protection from discovery.

   **B.** Privileged communications that post-date the filing of the complaint need not be placed on a privilege log. For the sake of clarity, this date restriction does not apply to non-privileged, responsive documents as otherwise contemplated herein. Nothing contained herein, however, is intended to limit a party's right to conduct discovery from third parties, nor a party's right to object to such discovery.

**C.** The Parties' privilege logs shall contain at least the following categories of information for each logged entry, to the extent available: (a) an assigned document identification number; (b) the date of the document or communication; (c) the nature of the document (i.e., email, document, memorandum, attachment, etc.); (d) the From/To/CC/BCC fields for all communications; (e) the nature of the claimed privilege; and (d) a summary of the general subject matter of the document or communication without revealing the information that is claimed to be privileged.

**D.** Where all of an email string is privileged, the Parties need only include one entry on the privilege log for the entire email string and need not log each email contained in the chain separately.

**E.** To the extent a privileged communication is contained in only a portion of an email string or in a portion of an attachment within a parent-child relationship, the privileged portions shall be included on the privilege log and the parent-child(ren) shall be produced in redacted form along with the rest of the non-privileged portions of the email string and the attachment(s).

**VIII. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

| | | |
|---|---|---|
| 1 | Dated: August 14, 2024 | SNELL & WILMER L.L.P. |
| 2 | | |
| 3 | | By: *Christopher D. Bright* |
| 4 | | Christopher D. Bright |
| 5 | | Attorneys for Plaintiff Kurin, Inc. |
| 6 | Dated: August 14, 2024 | KNOBBE, MARTENS, OLSON & BEAR, LLP |
| 7 | | |
| 8 | | |
| 9 | | By: *Ali S. Razai* |
| | | Ali S. Razai |
| 10 | | |
| 11 | | Attorneys for Defendant ICU Medical, Inc. |
| 12 | Dated: August 14, 2024 | BREWER & BREWER |
| 13 | | |
| 14 | | By: *Lance A. Brewer* |
| 15 | | Lance A. Brewer |
| 16 | | Attorneys for Defendant Vascular Integrity, LLC |

## SIGNATURE ATTESTATION

Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

SNELL & WILMER L.L.P.

By: *Christopher D. Bright*
Christopher D. Bright

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated:  08/14/2024                         s/ Autumn D. Spaeth
                                           HONORABLE AUTUMN D. SPAETH
                                           United States Magistrate Judge